## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DOUGLAS COLBY BARNES,

        Defendant.

Case No. 22-CR-00297-SEH

## <u>OPINION AND ORDER</u>

Before the Court is Defendant Douglas Barnes's motion to dismiss the indictment, arguing that delays in his competency restoration have violated the statues governing competency proceedings and his right to due process. [ECF No. 78]. For the reasons provided below, the motion is denied.

## I. Background/Procedural History

On August 17, 2022, the government charged Barnes with assault resulting in serious bodily injury in Indian Country through a federal criminal complaint. [ECF No. 1]. Two days later, Barnes appeared on the complaint and was ordered detained. [ECF No. 6]. The same day, his counsel met with him personally. [ECF No. 10]. Five days later, Barnes filed an unopposed motion to determine his competency. [ECF No. 10]. On August 29, 2022, United States Magistrate Judge Jodi F. Jayne granted the unopposed

motion and ordered Barnes to undergo a competency evaluation, pursuant to 18 U.S.C. § 4241. [ECF No. 13].

On September 6, 2022, a federal grand jury charged Barnes with violence against mass transportation systems on land, in violation of 18 U.S.C. §§ 1992(a)(6) and 1992(b)(1) (count one), kidnapping in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, and 1201(a)(2) (count two), assault resulting in serious bodily injury in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, and 113(a)(6) (count three), and assault by striking, beating, and wounding (a misdemeanor), in violation of 18 U.S.C. §§ 1151, 1152, and 113(a)(4) (counts four through six). [ECF No. 15].

On September 16, 2022, Barnes arrived at the Metropolitan Correctional Center (MCC) Chicago. [ECF No. 25]. MCC Chicago requested a 15-day extension of time to complete the competency evaluation from the 30 days allowed under § 4247(b) and anticipated that the evaluation would be complete by October 31, 2022. [*Id*.]. Judge Jayne granted the request and ordered the competency evaluation report be sent to the court by November 21, 2022. [ECF No. 26]. The sealed medical evaluation was filed on November 22, 2022. [ECF No. 27]. On November 30, 2022, Judge Jayne held a competency hearing and found Barnes competent to stand trial. [ECF No. 30].

On December 13, 2022, Barnes filed a notice of insanity defense and a second unopposed motion for competency evaluation, pursuant to 18 U.S.C. §§ 4241 and 4242. [ECF No. 44]. The government filed an unopposed motion for examination under § 4242. [ECF No. 45]. On December 20, 2022, Judge Jayne granted the unopposed motions and issued an order for Barnes to undergo a second competency evaluation and a first sanity evaluation, deferring to the medical facility the proper timing of the sanity evaluation in relation to any competency evaluation and determination. [ECF No. 49].

Fifteen days later, on January 4, 2023, Barnes arrived at the Federal Detention Center (FDC) Houston for evaluation. [ECF No. 52]. Because the Bureau of Prison's COVID-19 action plan required all new arrivals to be quarantined for approximately 5 days, the evaluation could not begin until January 10, 2023. [*Id*.]. BOP requested an extension of time to complete the evaluation and anticipated that it would be completed by March 11, 2023. [*Id*.]. Judge Jayne granted the request and ordered the evaluation report be sent to the court by March 30, 2023. [ECF No. 53]. The sealed medical evaluation report was filed on March 30, 2023. [ECF No. 57].

On April 12, 2023, Judge Jayne held a competency hearing and found Barnes incompetent to stand trial. [ECF No. 59]. She ordered that he be committed to the custody of the Attorney General for hospitalization "for care and treatment in a suitable facility for a reasonable amount of time, not to

exceed 120 days, as is necessary to determine whether there is a substantial probability that in the foreseeable future [he] will attain the competency to permit the proceedings to go forward." [*Id*. at 2] (citing 18 U.S.C. § 4241(d)(1)). Her order noted that a sanity evaluation had not yet been completed, and again deferred to the medical facility as to the proper timing of that evaluation in relation to Barnes's restoration to competency. [*Id*. at 3].

A bed was unavailable for Barnes at a designated medical center, so he waited in pre-hospitalization detention for approximately nine months. [ECF Nos. 60–62]. On January 23, 2024, Barnes was admitted to the Mental Health Unit of FMC-Butner in North Carolina. [ECF No. 62]. Judge Jayne granted a request for an extension of time to complete the competency evaluation and ordered that the evaluation report be sent to the court by June 4, 2024. [ECF No. 64]. The sealed report was filed on the deadline set by the court. [ECF No. 68].

The Court was informed that the evaluators began the sanity evaluation and expected to complete that evaluation on or around July 13, 2024. [ECF No. 69]. On July 12, 2024, another sealed evaluation report was filed. [ECF No. 70]. Judge Jayne ordered the parties to confer about the sealed report and how best to proceed in light of the evaluation. [ECF No. 71]. On July 30, 2024, Judge Jayne held a competency hearing and found Barnes incompetent to stand trial. [ECF Nos. 75, 76]. She directed that he continue receiving

further care and treatment, and set a briefing schedule on the first inquiry under *Sell v. United States*, 539 U.S. 166 (2003), to begin the process of determining whether Barnes should receive medication involuntarily. [*Id.*].

Barnes now moves to dismiss the indictment, claiming the government violated § 4241(d)(1) by failing to transport and have him evaluated within four months. [ECF No. 78 at 4–5]. He further argues that lengthy incarceration has violated his due process rights, as set out in *Jackson v. Indiana*, 406 U.S. 715 (1972). [*Id.* at 8–9]. The government responds that it did not violate § 4241(d), and even if it had, a violation would not warrant dismissal of the indictment. [ECF No. 84 at 5]. Further, the government argues that it has not violated Barnes's due process rights under *Jackson*, because his time awaiting hospitalization is reasonably related to effectuating his hospitalization. [*Id.* at 7–9]. Last, the government argues that if Barnes's due process rights were violated by his pre-hospitalization delay, dismissal of the indictment is not the appropriate remedy. [*Id.* at 9–10].

## II. Applicable Standard

The determination of competency involves multiple stages.

### A. Stage One

First, at any time between commencement of the criminal proceeding and before sentencing, any party may file a motion for a hearing to determine the

mental competency of a defendant. 18 U.S.C. § 4241(a). The Court shall grant the motion and order such a hearing, "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. *Id*. The competency hearing is often set for a few months after the motion. This is because the Court can—and often does— order that a defendant undergo a psychiatric or psychological examination and that a report be prepared prior to the hearing. *Id*. § 4241(b); *see also id*. § 4247(b) (describing the requirements for an examination), § 4247(c) (describing the requirements for a report). A reasonable extension to conduct the examination, not to exceed 15 days for orders pursuant to § 4241, may be granted upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant. 18 U.S.C. § 4247(b). The Court then conducts the hearing. *See* 18 U.S.C. § 4241(c). If, after the hearing, the Court finds the defendant competent, the process ends, and the defendant's criminal case resumes. If, as happened in this case, the Court "finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the

proceedings against him or to assist properly in his defense," the competency

proceeding heads to the next stage.

### B. Stage Two

At the second stage, the Court commits the defendant to the custody of the

Attorney General, who must

> hospitalize the defendant for treatment in a suitable facility—
>
> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward ….

18 U.S.C. § 4241(d)(1). This is what Judge Jayne ordered on April 12, 2023,

and what Barnes began about nine months later, on January 23, 2024. [ECF

Nos. 59, 62].

If, at any time, the director of the facility finds the defendant has

sufficiently recovered, he shall provide the Court a certificate to that effect.

*Id*. § 4241(e). Although not explicitly stated in the statute, the BOP

psychiatrist or psychologist also generally issues a new report under

§ 4247(c). Again, following the initial attempt at restoration, the Court may

find that the defendant has been restored to competency; that competency

proceedings may end; and that the prosecution may resume. *See id*. § 4241(e).

However, the Court may instead find—as Judge Jayne did in this case in

August 2024—that the defendant remains incompetent but there is a

substantial probability of restoration in the foreseeable future. If so, the competency proceedings head to the next stage.

### C. Stage Three

At the third stage, the defendant is again committed to the custody of the Attorney General, and the Attorney General shall, again

> hospitalize the defendant for treatment in a suitable facility--
>
> …
>
> (2)  for an additional reasonable period of time until--
>
>> (A)  his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
>>
>> (B)  the pending charges against him are disposed of according to law;
>
> whichever is earlier.

18 U.S.C. § 4241(d)(2). Judge Jayne ordered this on August 1, 2024. [ECF Nos. 75, 76].

A *Sell* hearing is a subpart to this stage and is necessary to "permit involuntary administration of drugs solely for trial competence purposes in certain instances." *Sell*, 539 U.S. at 180. *Sell* establishes a four-part inquiry to determine if involuntary medication is appropriate. A court may order a defendant involuntarily medicated upon a finding that: (1) an important governmental interest is at stake; (2) that involuntary medication will

significantly further the government's interest of rendering the defendant competent to stand trial; (3) that involuntary medication is necessary to further those interests; and (4) that the administration of medication is medically appropriate. *Sell* at 180–181. Judge Jayne ordered briefing on the first *Sell* factor on August 1, 2024, when she ordered Barnes hospitalized for treatment under § 4241(d)(2). [ECF Nos. 75, 76].

### D. Stage Four and Beyond

There are also potential later stages if a defendant is found not to have sufficiently recovered. *See* 18 U.S.C. § 4241(d); *see also id*. § 4246 (addressing a defendant whose "release would create a substantial risk of bodily injury to another person or serious damage to property of another"), § 4248 (addressing a defendant who is deemed a "sexually dangerous person"). Barnes asks this Court to dismiss the indictment but hold the order "in abeyance for a reasonable period of time so the government can determine whether … to proceed with civil commitment" under § 4246 or other authority. [ECF No. 78 at 3]. However, considerations under § 4246 are not pertinent to the instant decision.

## III. Analysis

### A. The government has not violated § 4241(d)(1).

Barnes argues that the government violated § 4241(d)(1) because his competency was not evaluated within four months of Judge Jayne's April 12,

2023 order. [ECF No. 78 at 4–5]. Undeniably, because Barnes was committed in April 2023 under § 4241(d)(1) (stage two), there is some support for his position. Another district court has held that the four-month time limit begins at the time of the court's order declaring the defendant incompetent and committing him to the custody of the Attorney General. *United States v. Carter*, 583 F. Supp. 3d 94 (D.D.C. 2022). That court viewed § 4241(d)(1) as limiting the time of "custody" over a defendant to a total of four months and "to the degree that § 4241(d)(1) allows the government to delay defendants' transportation, those delays must be a part of the 'reasonable period of time, not to exceed four months.'" *Id.* at 100–01 (quoting § 4241(d)(1)). Similarly, Judge Watford's stated in his concurring opinion in *United States v. Donnelly*, that it was his view that "Congress plainly imposed four months as the outside limit on the entire period a defendant is committed to the custody of the Attorney General for treatment and evaluation, inclusive of any pre-hospitalization delay." 41 F.4th 1102, 1108 (9th Cir. 2022). However, this Court respectfully disagrees.

The plain language of the statute indicates that the "reasonable period of time" refers to the time during which the "Attorney General shall *hospitalize* the defendant for treatment …." 18 U.S.C. § 4241(d) (emphasis added); *see also Donnelly*, 41 F.4th at 1105 ("We think the text of the statute makes clear that the four-month time limit applies only to the period of hospitalization,

and thus begins to run when the defendant has been hospitalized."). Thus, the Court finds that the "reasonable period of time, not to exceed four months" in § 4241(d)(1) begins to run when the defendant is hospitalized, not during any pre-hospitalization delay. The record reflects that Barnes was hospitalized on January 23, 2024 and his evaluation completed by May 21, 2024. [ECF Nos. 62, 68]. On June 5, 2024, the evaluators informed the Court that they had begun Barnes's sanity evaluation, as Judge Jayne ordered under § 4242. [ECF No. 69]. Therefore, Barnes's hospitalization to determine his competency did not extend beyond the four-month period outlined in § 4241(d)(1).

### B. Nor did the time Barnes await hospitalization violate his due process rights, because the delay was reasonably related to effectuating his treatment.

There must be some limit on delay, though, and the Court does not have an outer limit for subsection (d)(2)'s "additional reasonable period of time" on which to tie its analysis. *Donnelly* at 1106. Due process "requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

Here, the government argues that Barnes's time awaiting hospitalization is reasonably related to effectuating his hospitalization, and the record shows that Barnes's pre-hospitalization delay was a result of waiting for a bed at

FMC-Butner. [ECF Nos. 84 at 7, 60, 61]. Factors relating to the reasonable attempt to operate a medical facility in a way that best accommodates the medical needs of its patients or that allow for appropriate doctor-patient ratios might make a delay in hospitalization reasonable in certain circumstances, and particularly when the factors were temporary. *See United States v. Delorme*, No. CR 19-2322 JB, 2023 WL 8020262, at *22–23 (D.N.M. Nov. 17, 2023) (finding nine-month wait reasonably related to achieving hospitalization where the delays resulted from the backlog created by the COVID-19 pandemic and staffing shortages). Therefore, the Court finds Barnes's wait to bear a reasonable relation to the purpose for which he was committed.

## C. Dismissal of the indictment is not an appropriate remedy for a § 4241 violation or a related due process violation.

Even if the government had violated § 4241 or Barnes's due process rights, dismissal of the indictment would not be the appropriate remedy. The IDRA provides no remedy for a violation of § 4241(d). *See also Donnelly*, 41 F.4th at 1106 ("Congress did not prescribe dismissal of the indictment as a remedy for violation of the time limits imposed by § 4241(d), as it has, for example, in the context of violations of time limits imposed by the Speedy Trial Act.");
*Delorme*, 2023 WL 8020262, at *27.

Some courts have—in this absence—attempted to craft a remedy, although dismissal is not the first remedy applied. *See*, *e.g.*, *Donnelly*, 41 F.4th at 1107 (requiring district court to first order the Attorney General to hospitalize the defendant within seven days and noting that dismissal may be appropriate if the Attorney General does not comply); *United States v. Lara*, 671 F. Supp. 3d 1257, 1265-66 (D.N.M. 2023) (same); *United States v. Leusogi*, No. 2:21-CR-32-TS, 2022 WL 11154688, at *3 (D. Utah Oct. 19, 2022) (same). This is because "[d]ismissal of an indictment is an extraordinary remedy, which the Supreme Court has characterized as 'drastic,' and the Tenth Circuit has described as 'draconian.'" *Leusogi*, 2022 WL 11154688, at *3 (quoting *United States v. Morrison*, 449 U.S. 361, 366–67 (1981) and *United States v. Gonzalez*, 248 F.3d 1201, 1205 (10th Cir. 2001)). At least one court has found that it is neither appropriate to order the Attorney General to expedite their individual defendant, nor to threaten dismissal. *See Delorme*, 2023 WL 8020262, at *27–28.

And even under the authorities most favorable to Barnes, when a due process violation occurs due to a wait for hospitalization, the first step a court typically takes is to order the defendant hospitalized at a suitable facility within a certain number of days. *See*, *e.g.*, *Lara*, 671 F. Supp. 3d at 1257 (collecting cases). But ordering a defendant "to jump the line … only contribute[s] to the delays for other defendants who may have been waiting

13

similar lengths of time, a troubling result in the larger context of the delays many defendants are facing." *Id*. at 1265. And here, that remedy has already occurred without any court action. Therefore, there is no need for any further court order.

## IV. Conclusion

For the reasons stated above, the Court finds that delays in Barnes's competency restoration have not violated the statues governing competency proceedings or his due process rights.

IT IS THEREFORE ORDERED that the Defendant's motion to dismiss the indictment [ECF No. 78] is DENIED.

DATED this 3rd day of September, 2024.

_____

Sara E. Hill
UNITED STATES DISTRICT JUDGE